# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **WROCKELLE SHAW,** ) | |
| ) | **CIVIL ACTION FILE NO.** |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | |
| **GEORGIA DEPARTMENT OF** ) | |
| **BEHAVIORAL HEALTH &** ) | |
| **DEVELOPMENTAL DISABILITIES** ) | |
| **and EAST CENTRAL REGIONAL** ) | **JURY TRIAL DEMANDED** |
| **HOSPITAL,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

## COMPLAINT FOR DAMAGES

**COMES NOW**, Plaintiff Wrockelle Shaw ("Plaintiff" or "Ms. Shaw") and files this her Complaint for Damages and demand for jury trial against Defendant East Central Regional Hospital ("Defendant ECRH") and Defendant Georgia Department of Behavioral Health & Developmental Disabilities ("Defendant GDBH"), and respectfully shows this Court as follows:

## NATURE OF COMPLAINT

1.

Plaintiff brings this action for damages caused by Defendants' discriminatory employment practices in violation of Title VII of the Civil Rights Act of 1964, as

1

amended, 42 U.S.C. §2000e, et seq. ("Title VII") and 42 U.S.C. §1981 ("Section 1981").

## JURISDICTION AND VENUE

2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. § 1331 and 1343.

3.

Defendant ECRH is located and doing business within this judicial district and division.

4.

Defendant GDBH conducts business throughout the state of Georgia, including within this judicial district and division. Defendant GDBH is headquartered within this judicial district.

5.

This action is brought within the Northern District of Georgia where venue is proper under 28 U.S.C. § 1391.

## PARTIES

6.

Plaintiff, Wrockelle Shaw, is a resident of the state of Georgia and is subject to the jurisdiction of this Court.

7.

Plaintiff is African American and is therefore a member of a protected class under Title VII.

8.

During all times material to this lawsuit, Plaintiff was employed by Defendant ECRH and was an "employee" as defined in Title VII.

9.

During all times material to this lawsuit, Defendant was an "employer" as defined in Title VII.

10.

Through her employment at East Central Regional Hospital, Plaintiff had a contractual relationship with both Defendants.

11.

Defendants are subject to the anti-discrimination and anti-retaliation provisions of Section 1981 and Title VII.

12.

Defendant GDBH retains ultimate authority regarding all rules and regulations that govern ECRH. Defendant GDBH may be served through its Commissioner, Judy Fitzgerald, at her office located at Two Peachtree Street, NW, 24th Floor, Atlanta, Georgia 30303.

13.

Defendant ECRH is a state hospital operated by Defendant GDBH conducting business in Augusta, Georgia, and at all times material hereto has conducted business within this District. Defendant ECRH may be served through its Chief Operating Officer Mickie Collins at 3405 Mike Padgett Highway, Augusta, Georgia 30906.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14.

Plaintiff satisfied all administrative prerequisites to perfect her claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about April 15, 2020.

15.

A notice of Right to Sue letter was issued on September 11, 2020, and Plaintiff brings this suit within ninety (90) days of receipt of that notice.

## FACTUAL ALLEGATIONS

16.

On or about April 16, 2019, Ms. Shaw began working as a Health Services Technician ("HST") for Defendant ECRH, a facility owned and operated by Defendant GDBH.

17.

At all times relevant to this complaint, Julie Keber (Caucasian) was Ms. Shaw's supervisor.

18.

Beginning at the onset of her employment with Defendant ECRH, Ms. Shaw was harassed and bullied by Keber.

19.

Among other things, Keber assigned Ms. Shaw additional work that other employees were not required to complete, inequitably applied department policies, and refused to assist Ms. Shaw when she asked for assistance.

20.

On or about July 10, 2019, in response to Keber's harassment, Ms. Shaw informed the Office of Human Resources and Learning that Keber harassed and bullied her based on her race.   Human Resources made no attempts to resolve the issue.

21.

On or about July 25, 2019, Ms. Shaw asked Keber for assistance with a patient in the restroom.  Keber burst into the restroom and pushed Ms. Shaw out of her way with her body and grabbed the patient, forcefully transferring him to the toilet.  Ms. Shaw immediately reported this incident to a manager, but nothing was done.

22.

Keber's harassment escalated after Ms. Shaw reported this incident.

23.

On or about September 12, 2019, Keber reported to work at approximately 6:40 AM.  Ms. Shaw reported to work at approximately 7 AM with the other employee on her shift.  After clocking in, Ms. Shaw made her rounds and discovered the patient referred to in Paragraph ##, above, laying at the foot of his bed, bleeding from his head.  Ms. Shaw immediately reported her observations.  An investigation ensued.

24.

In response to Ms. Shaw's report, the floor manager, Jenelle Leggett suspended Ms. Shaw from September 12, 2019 through September 21, 2019.  Keber, one of the only employees known to be in the area before the patient was discovered, was not suspended.  However, Ms. Shaw was disciplined despite following protocol.

25.

Upon information and belief, Ms. Shaw's suspension was imposed because Ms. Shaw complained about Keber and because Keber is white and Ms. Shaw is black.

26.

On or about September 24, 2019, Ms. Shaw asked Keber to help her feed a patient. Keber stated that she would but then refused to assist.

27.

At the time of the allegations contained in Paragraph ##, above, Ms. Shaw spoke with manager Sonia Jackson, who confirmed that one of Keber's job responsibilities was to assist Ms. Shaw and other Health Services Technicians. However, Keber continued to reject or ignore Ms. Shaw's requests for assistance.

28.

Even though it was Keber's job to assist Ms. Shaw, another coworker was forced to help Ms. Shaw because Keber refused.

29.

On or about November 22, 2019, Ms. Shaw asked Keber for assistance bringing a patient into the restroom. Keber refused to push the patient's wheelchair into the room, leaving a special precaution individual who needs constant monitoring in the hallway alone.

30.

On or about November 23, 2019, Keber was assigned to Ms. Shaw's group of patients while Ms. Shaw was at lunch. When Ms. Shaw returned, she discovered

that Keber lost one of her patients. Keber could not be bothered to look for the patient, instead demanding that Ms. Shaw locate the individual.

31.

On or about November 23, 2019, Keber embarrassed Ms. Shaw by requiring her to stand out in the hallway while a patient was being tube fed, which Ms. Shaw later learned is not required.

32.

On or about December 7, 2019, Keber threatened to write up Ms. Shaw for violating a documentation policy which is constantly violated by Caucasian employees under Keber's direction but is never enforced against those employees. Keber inequitably applied this policy, targeting Ms. Shaw and unfairly subjecting her to adverse employment action while not subjecting Caucasian employees to the same treatment.

33.

On or about December 9, 2019, Ms. Shaw asked Keber if she could return from work 10-15 minutes late due to an emergency. Keber agreed.

34.

After returning to work, Ms. Shaw was disciplined for taking extra time at lunch, even though she asked ahead of time. Other Health Services Technicians

under Keber's command routinely took extended lunches without permission and were never disciplined.

35.

On or about December 16, 2019, Ms. Shaw submitted a written complaint to Human Resources stating that Keber was targeting and harassing her based on her race.

36.

On or about January 9, 2020, Ms. Shaw filed another written complaint alleging harassment by Keber. Again, Human Resources and supervisors ignored and dismissed Ms. Shaw's allegations of racial discrimination and claims of hostile work environment, consistently believing the statements of Keber over Ms. Shaw.

37.

Ms. Shaw, defeated by ECRH staff's refusal to do anything about her multiple reports of harassment and the hostile work environment she endured, suffered a constructive discharge from her employment in January 2020 due to the overwhelming amount of mental anguish she experienced.

38.

Keber unfairly applied policies and procedures to Ms. Shaw that were not applied to her white counterparts.

39.

Keber repeatedly rejected and ignored Ms. Shaw's requests for assistance. Aiding Ms. Shaw and other HST employees was part of Keber's job description.

40.

Ms. Shaw was in constant fear of Keber and her escalating behavior, especially since Keber's flare-ups were often physical.

41.

Ms. Shaw complained of harassment and a hostile work environment multiple times, with no affirmative action taken by Defendants.

42.

Ms. Shaw specifically reported to her floor manager, Leggett, that Defendant mistreated Ms. Shaw because she was black.

43.

East Central Regional Hospital continued to employ Keber following Ms. Shaw's complaints and her resignation.

44.

Upon information and belief, Ms. Keber's treatment of Ms. Shaw was racially motivated.

## COUNT I
## RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

45.

Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 44 as if fully set forth herein.

46.

During Plaintiff's employment with Defendant ECRH, Defendants subjected her to discrimination on the basis of her race including, but not limited to: (a) imposing and enforcing workplace policies, practices, and procedures against her but not other employees; (b) failing and refusing to properly support Plaintiff but adequately supporting other employees; (c) subjecting Plaintiff to unfair disciplinary action as compared to white employees; (d) favoring and believing Keber, a white employee, over Plaintiff because of her race; (e) ignoring and actively denying Plaintiff's specific complaints about racial discrimination.

47.

The above-pled discriminatory conduct toward Plaintiff constitutes race discrimination by Defendants against Plaintiff in violation of 42 U.S.C. § 1981.

48.

As a direct and proximate result of Defendants' unlawful actions, Plaintiff suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

49.

Defendants undertook their conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights or, alternatively, undertook their conduct recklessly with respect to Plaintiff and her federally protected rights, entitling her to recover punitive damages against them.

50.

Plaintiff is entitled to damages against Defendants, including back pay and lost benefits, compensatory damages, punitive damages, attorney's fees and costs of litigation, and all other relief recoverable under 42 U.S.C. § 1981.

## COUNT II
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII

51.

Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 50 as if fully set forth herein.

52.

At all relevant times, Plaintiff was an "employee" as defined by Title VII, 42 U.S.C. § 2000e(f).

53.

At all relevant times, Defendant ECRH was Plaintiff's "employer" as defined by Title VII, 42 U.S.C. § 2000e(b).

54.

Plaintiff is African American and is therefore a member of a protected class under Title VII.

55.

Plaintiff met the qualifications for her position as a Health Services Technician and performed well in that position.

56.

Plaintiff's race was a motivating factor in the above-pled discriminatory actions, even if race was not the only factor that motivated those decisions.

57.

The race discrimination to which Plaintiff was subjected by Defendant ECRH was in violation of Title VII, thus entitling her to all appropriate relief provided under the statute.

58.

Defendant ECRH's actions were willful, deliberate, and intended to cause Plaintiff harm and/or were committed with reckless disregard of the harm caused to Plaintiff, and were in derogation of Plaintiff's federally protected rights.

## COUNT III
## CONSTRUCTIVE DISCHARGE IN VIOLATION OF TITLE VII AND SECTION 1981

59.

Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 58 as if fully set forth herein.

60.

Defendants repeatedly ignored Plaintiff's multiple complaints of race-based harassment and bullying.

61.

Defendants allowed its employees to treat Plaintiff in a rude and sometimes physically violent manner even after Plaintiff complained.

62.

Defendants transferred Plaintiff out of her assigned wing even though she was the employee being targeted.

63.

Defendants, through Plaintiff's complaints of harassment, knew that its employees gave Plaintiff additional assignments and inequitably applied policies to Plaintiff, but they did nothing.

64.

Defendants knew that Plaintiff was subject to unreasonable and extreme harassment and bullying that would force a reasonable person to cease working for Defendants.

65.

Plaintiff's resignation was not voluntary because Plaintiff could no longer complete her job responsibilities due to extraordinary and unreasonable treatment committed by Defendants and their agents.

**WHEREFORE**, Plaintiff requests the following relief:

a) General damages for mental and emotional suffering caused by the misconduct of Defendant;

b) Punitive damages based on the Defendant's willful, malicious, intentional, and deliberate acts;

c) Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

d) Reasonable attorneys' fees and expenses of litigation;

e) Trial by jury as to all issues;

f) Prejudgment interest at the rate allowed by law;

g) Declaratory relief to the effect that Defendant violated Plaintiff's statutory rights;

h) Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

i) All other relief to which she may be entitled.

## DEMAND FOR JURY TRIAL

Plaintiff herewith demands trial by jury as to all issues to which a right to trial by jury is afforded.

Respectfully submitted, this 10th day of December, 2020.

HOFFER & WEBB, LLC

_____
ROBYN OLIVER WEBB
Georgia Bar No. 552505
*Counsel for Plaintiff*

3190 Northeast Expressway, Suite 430
Chamblee, Georgia 30341
404-260-6330 Office
404-260-6192 Direct / Fax
rwebb@hofferwebb.com
mhoffer@hofferwebb.com

## **CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 5.1C**

Pursuant to the Local Rules of this Court, the above-signed counsel certify that this pleading complies with all formatting requirements of the Local Rules and further certifies that this pleading is printed in Times New Roman, 14-point type.